**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| TRINITY REGIONAL MEDICAL CENTER,<br><br>      Plaintiff,<br><br>vs.<br><br>ALEX M. AZAR II, Secretary of Health and Human Services,<br><br>      Defendant. | No. 17-CV-3029-LRR<br><br>**ORDER** |

_____

### *TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *SUBJECT MATTER JURISDICTION.* . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*   *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

      *A.*     *Review of Final Decision* . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
      *B.*     *Review of Report and Recommendation* . . . . . . . . . . . . . . . . . . *3*

*V.*     *RELEVANT FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . *4*

      *A.*     *The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
      *B.*     *Relevant Statutory and Regulatory Background* . . . . . . . . . . . . . . *4*
      *C.*     *Overview of the Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*

*VI.*   *ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

      *A.*     *Substantial Deference* . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
      *B.*     *Classification of Costs as Variable* . . . . . . . . . . . . . . . . . . . . *12*
      *C.*     *Reimbursement of Variable Costs through DRG* . . . . . . . . . . . . *13*
      *D.*     *Consistency with Underlying Statute* . . . . . . . . . . . . . . . . . . . *14*
      *E.*     *Consistent Application* . . . . . . . . . . . . . . . . . . . . . . . . . . *15*
      *F.*     *Consistency with Manual* . . . . . . . . . . . . . . . . . . . . . . . . . *17*

*VII.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

# I. INTRODUCTION

The matter before the court is Plaintiff Trinity Regional Medical Center's ("Trinity") Objections (docket no. 33) to United States Chief Magistrate Judge C.J. Williams's Report and Recommendation (docket no. 32), which recommends that the court affirm Defendant Secretary of Health and Human Services's ("Secretary") decision to deny additional reimbursement.

# II. RELEVANT PROCEDURAL HISTORY

On April 21, 2017, Trinity filed the Complaint (docket no. 1). In the Complaint, Trinity claims that the Secretary failed to reimburse it amounts to which it is entitled under the Medicare program as a sole community hospital that experienced a significant decrease in volume beyond its control. *See generally* Complaint. On July 3, 2017, the Secretary filed an Answer (docket no. 8) generally denying that Trinity was entitled to additional reimbursement. On November 3, 2017, Trinity filed the Plaintiff's Brief (docket no. 14). On December 12, 2017, the Secretary filed the Defendant's Brief (docket no. 17). On January 12, 2018, Trinity filed the Reply Brief (docket no. 22). On the same date, the matter was referred to Judge Williams for issuance of a report and recommendation. On March 19, 2018, Judge Williams issued the Report and Recommendation, which recommends that the court affirm the Secretary's decision to deny reimbursement. On April 2, 2018, Trinity filed the Objections. On April 16, 2018, the Secretary filed the Response to Objections (docket no. 34). Neither party has requested oral argument and the court finds that oral argument is unnecessary. The matter is fully submitted and ready for decision.

# III. SUBJECT MATTER JURISDICTION

The court has jurisdiction over the instant action pursuant to 42 U.S.C. § 1395oo(f)(1). *See* 42 U.S.C. § 1395oo(f)(1) (stating that "[p]roviders shall have the right to obtain judicial review of any final decision of the Board, or of any reversal,

affirmance, or modification by the Secretary").

## IV. STANDARD OF REVIEW

### A. *Review of Final Decision*

The Secretary's decision is the result of formal adjudication and, therefore, judicial review is governed by the standard set forth in the Administrative Procedure Act ("APA"). *See id.* Under the APA, a reviewing court may set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (E). "When reviewing an agency decision, [the court] accord[s] substantial deference to the agency's interpretation of the statutes and regulations it administers." *Siebrasse v. USDA*, 418 F.3d 847, 851 (8th Cir. 2005). However, courts do not defer to an agency interpretation that is "inconsistent with the plain language of the statute or constitutes an unreasonable interpretation of an ambiguous statute." *Afolayan v. INS*, 219 F.3d 784, 787 (8th Cir. 2000). Simply put, courts "do not defer to legal interpretations that are arbitrary, capricious, or manifestly contrary to the statutory law." *Patel v. Ashcroft*, 375 F.3d 693, 696 (8th Cir. 2004).

### B. *Review of Report and Recommendation*

The standard of review to be applied by the court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (providing that, when a party properly objects to a report and recommendation on a dispositive motion, a district court must review de novo the magistrate judge's recommendation). The Eighth Circuit has repeatedly held that it is reversible error for a district court to fail to conduct a de novo

review of a magistrate judge's report and recommendation when such review is required. *See, e.g.*, *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995); *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). The statute governing review provides only for de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court reviews the unobjected-to portions of the proposed findings or recommendations for "plain error." *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (reviewing factual findings for "plain error" where no objections to the magistrate judge's report were filed).

## V. RELEVANT FACTUAL BACKGROUND

### A. *The Parties*

Trinity is a hospital located in Fort Dodge, Iowa. Complaint ¶ 1. At all relevant times, Trinity participated in the Medicare Program as a provider of inpatient hospital services. *Id*. Further, at all relevant times Trinity qualified as a sole community hospital. *Id*. ¶ 17. The Secretary is the federal official responsible for administration of the Medicare Program under Title XVIII of the Social Security Act. *Id*. ¶ 2.

### B. *Relevant Statutory and Regulatory Background*

Under the Medicare program, hospitals are reimbursed for their inpatient operating costs using a prospective payment system. *Id*. ¶ 14. These payments are predetermined, fixed amounts based on the particular diagnosis-related group ("DRG") to which each patient is assigned. *Id*. ¶ 15; *see also* 42 U.S.C. § 1395ww(d). DRG amounts are set to approximate the average cost of caring for a patient with a given diagnosis, subject to certain geographic and other adjustments. Complaint ¶ 15. The Medicare program also provides for payment exceptions and adjustments. *Id*. ¶ 16.

One such adjustment is the volume decrease adjustment ("VDA") to which "a sole

4

community hospital" may be entitled. *Id*. ¶¶ 13, 16; *see also* 42 U.S.C. § 1395ww(d)(5)(D)(ii). A "sole community hospital" is a hospital that (1) "the Secretary determines is located more than [thirty-five] road miles from another hospital"; (2) "by reason of factors such as the time required for an individual to travel to the nearest alternative source of appropriate inpatient care . . ., location, weather conditions, travel conditions, or absence of other like hospitals . . . is the sole source of inpatient hospital services reasonably available to individuals in a geographic area who are entitled to benefits"; or (3) "is located in a rural area and designated by the Secretary as an essential access community hospital." 42 U.S.C. § 1395ww(d)(5)(D)(iii). To qualify for a VDA payment, a sole community hospital must experience "a decrease of more than [five] percent in its total number of inpatient cases due to circumstances beyond its control." *Id*. § 1395ww(d)(5)(D)(ii); *see also* 42 C.F.R. § 412.92(e)(1). A sole community hospital must submit a request to the Medicare Administrative Contractor ("MAC") demonstrating that (1) the hospital has experienced a decrease in discharges greater than five percent and (2) "the decrease is due to circumstances beyond the hospital's control." 42 C.F.R. § 412.92(e)(2); *see also* Complaint ¶ 18. If the sole community hospital meets both of these criteria, the MAC then determines the VDA payment due to the provider. Complaint ¶ 19.

The VDA payment shall "fully compensate the hospital for the fixed costs it incurs in the period in providing inpatient hospital services, including the reasonable cost of maintaining necessary core staff and services." 42 U.S.C. § 1395ww(d)(5)(D)(ii). The controlling regulations do not provide a specific formula for calculating the VDA payment. Rather, they provide that "[i]n determining the adjustment amount, the [MAC] [shall] consider" (1) "[t]he individual hospital's needs and circumstances, including the reasonable cost of maintaining necessary core staff and services in view of minimum staffing requirements imposed by State agencies"; (2) "[t]he hospital's fixed (and semi-fixed)

5

costs"; and (3) "[t]he length of time the hospital has experienced a decrease in utilization." 42 C.F.R. § 412.92(e)(3)(i). However, the adjustment shall not "exceed the difference between the hospital's Medicare inpatient operating costs and the hospital's total DRG revenue for inpatient operating costs based on DRG-adjusted prospective payment rates for inpatient operating costs." *Id.* § 412.92(e)(3).

The Medicare Provider Reimbursement Manual ("PRM") "is an extensive set of informal interpretative guidelines and policies published to assist intermediaries and providers." *Saint Marys Hosp. v. Leavitt*, 535 F.3d 802, 807 (8th Cir. 2008) (quoting *Horras v. Leavitt*, 495 F.3d 894, 900 (8th Cir. 2007)). Chapter 28 of the PRM provides MACs additional guidance regarding calculation of VDA payments. Chapter 28 states in relevant part that,

> Additional payment is made to an eligible [sole community hospital] for the fixed costs it incurs in the period in providing inpatient hospital services including the reasonable cost of maintaining necessary core staff and services, not to exceed the difference between the hospital's Medicare inpatient operating cost and the hospital's total DRG revenue.
>
> Fixed costs are those costs over which management has no control. Most truly fixed costs, such as rent, interest, and depreciation, are capital-related costs and are paid on a reasonable cost basis, regardless of volume. Variable costs, on the other hand, are those costs for items and services that vary directly with utilization such as food and laundry costs.
>
> In a hospital setting, however, many costs are neither perfectly fixed nor perfectly variable, but are semifixed. Semifixed costs are those costs for items and services that are essential for the hospital to maintain operation but also vary somewhat with volume. For purposes of this adjustment, many semifixed costs, such as personnel-related costs, may be considered as fixed on a case-by-case basis.
>
> In evaluating semifixed costs, the intermediary considers the

> length of time the hospital has experienced a decrease in utilization. For a short period of time, most semifixed costs are considered fixed. As the period of decreased utilization continues, we expect that a cost-effective hospital would take action to reduce unnecessary expenses. Therefore, if a hospital did not take such action, some of the semifixed costs may not be included in determining the amount of the payment adjustment.
>
> The adjustment amount includes the reasonable cost of maintaining necessary core staff and services. The intermediary reviews the determination of core staff and services based on an individual hospital's needs and circumstances; e.g., minimum staffing requirements imposed by State agencies.

PRM § 2810.1(B). The PRM also includes sample calculations which provide further guidance as to how to determine the VDA amount. The preamble to the rule provides that "[t]he adjustment amount is determined by subtracting the second year's DRG payment from the lesser of: (a) [t]he second year's costs minus any adjustment for excess staff; or (b) the previous year's costs multiplied by the appropriate IPPS update factor minus any adjustment for excess staff." 71 Fed. Reg. 47870, 48056 (Aug. 18, 2006).

The MAC determines whether a hospital is entitled to a VDA payment and, if so, the amount of the payment. A hospital may appeal the MAC's determination of Medicare Program reimbursement to the Provider Reimbursement Review Board ("PRRB"). Complaint ¶ 11; *see also* 42 U.S.C. § 1395oo(a). A decision of the PRRB "shall be final unless the Secretary, on his own motion . . . reverses, affirms, or modifies the [PRRB's] decision." 42 U.S.C. § 1395oo(f)(1). Additionally, "[p]roviders shall have the right to obtain judicial review of any final decision of the [PRRB], or of any reversal, affirmance, or modification by the Secretary." *Id*.

### C. *Overview of the Dispute*

As a result of an alleged volume decrease, Trinity requested a VDA payment in the

amount of $812,333. *See* Administrative Record Volume I ("AR I") at 51-52. Trinity calculated this amount as follows. First, Trinity calculated its costs for fiscal year ("FY") 2006 and updated that by the prospective payment system amount:

| | |
|---|---|
| FY 2006 Program Operating Cost | $29,475,624 |
| FY 2007 PPS Standardized Amount Update Factor | x <u>1.034</u> |
| FY 2007 Maximum Allowable Cost | $30,477,795 |

Complaint ¶ 23. Second, Trinity determined the lesser of its FY 2006 operating costs updated ($30,477,795) and its FY 2007 operating costs ($27,549,808). *Id*. Third, Trinity deducted its Medicare operating payments from its FY 2007 operating costs.

| | |
|---|---|
| FY 2007 Program Inpatient Operating Costs | $27,549,808 |
| FY 2007 PPS Operating Payments | -<u>$26,737,475</u> |
| FY 2007 Payment Adjustment | $   812,333 |

*Id*. Trinity determined that the VDA cap amounted to $812,333. *Id*. Trinity concluded that because "its allowable operating costs . . . exceeded its cap . . . that its VDA equaled its cap." *Id*.

On June 5, 2012, the MAC denied Trinity's VDA request. *See* Administrative Record Volume II ("AR II") at 160-61. First, the MAC concluded that the costs Trinity sought for laundry and linen services, housekeeping, dietary costs of food, medical supplies charged to patients and drugs charged to patients were variable costs and, thus, were not compensable under the VDA. *Id*. The MAC deducted $5,514,226 in variable costs from Trinity's total inpatient program operating costs. Complaint ¶ 25.

| | |
|---|---|
| FY 2007 Program Inpatient Operating Costs | $27,549,808 |
| FY 2007 Variable Costs | <u>$ 5,514,226</u> |
| FY 2007 Program Inpatient Fixed/Semi-Fixed Costs | $22,035,582 |

The MAC determined that the total DRG revenue that Trinity had received, in the amount of $26,737,475, "exceeded [Trinity's] fixed/semi-fixed Medicare inpatient costs," which

totaled $22,035,582. AR II at 161; Complaint ¶ 25. Therefore, the MAC concluded that Trinity was not entitled to a VDA payment. *See* AR II at 161.

Trinity timely filed a hearing request with the PRRB. Complaint ¶ 26. Trinity argued that "the MAC's reclassification and elimination of certain costs as 'variable' was erroneous." *Id*. The PRRB concluded that the disputed costs were variable costs. *Id*. ¶ 27. The PRRB also concluded that the MAC had incorrectly calculated the VDA and applied an alternative calculation, ultimately determining that Trinity was entitled to a VDA payment of $581,537. *Id*. ¶ 28. The Center for Medicare and Medicaid Services ("CMS") informed the parties that it intended to review the PRRB's decision. *Id*. ¶ 29.

On February 9, 2017, the Secretary issued his decision. *Id*. ¶ 30. The Secretary concluded that the variable costs for FY 2007 were properly eliminated because they were both "specifically identified as variable [costs] in the PRM" and were the types of costs that would "be expected to be inherently correlated to some degree with patient volume." Exhibit B (docket no. 1-2) at 11-12. Therefore, the Secretary affirmed the PRRB's decision to eliminate the variable costs. *Id*. at 12.

The Secretary found that the PBBR's methodology in calculating the VDA payment was "in direct contradiction to the statute and [the] regulations and guidance wherein the intent is to compensate qualified hospitals for their fixed costs and not their variable costs." *Id*. The Secretary deducted the FY 2007 variable costs from the FY 2007 operating costs:

| | |
|---|---:|
| FY 2007 Program Inpatient Operating Costs | $27,549,808[1] |
| FY 2007 Variable Costs | -$ 5,514,226 |
| Provider's Fixed Costs | $22,035,582 |

The Secretary then deducted Trinity's DRG payments from its fixed costs:

---

[1] The Secretary determined that Trinity's $27,549,808 in operating costs for FY 2007 was less than the maximum allowable cost of $30,477,795.

9

| | |
|---|---:|
| Provider's Fixed Costs | $22,035,582 |
| Provider's DRG Payments | -$26,941,009 |
| VDA Payment Amount | -$ 4,905,427 |

Because the calculation resulted in a negative adjustment amount, the Secretary concluded that Trinity was not entitled to a VDA payment. *Id*. at 14. Trinity subsequently filed the Complaint, contending that the Secretary improperly eliminated certain costs as variable and erroneously denied a VDA reimbursement payment.

## VI. ANALYSIS

Trinity raises six objections to the Report and Recommendation. First, Trinity objects to Judge Williams affording substantial deference to the Secretary's construction of the relevant statute and regulation. *See* Objections at 2. Second, Trinity objects to Judge Williams's finding that the Secretary's classification of the costs at issue as "variable" is supported by substantial evidence and the applicable law. *Id*. at 3. Third, Trinity objects to Judge Williams's finding that the statute at issue does not require that a hospital must receive its usual share of reimbursement through the DRG payment for its variable costs. *Id*. at 3-5. Fourth, Trinity objects to Judge Williams's finding that the Secretary's methodology is consistent with the underlying VDA statute. *Id*. at 5-6. Fifth, Trinity objects to Judge Williams's finding that the Secretary has consistently applied the methodology at issue to determine the VDA payment. *Id*. at 6-9. Sixth, Trinity objects to Judge Williams's finding that it is not clear that the methodology employed by the Secretary is inconsistent with the PRM. *Id*. at 9-11. The court shall address each objection in turn.

### A. Substantial Deference

Trinity objects to Judge Williams affording substantial deference to the Secretary's construction of the relevant statute and regulation. *See id*. at 2. Trinity contends that deference is not appropriate in this case because "the Secretary's construction is

inconsistent with the controlling statute and the underlying Medicare prospective payment system . . . statute, was not developed contemporaneously with the implementing statute or regulation, and was not consistently applied over time." *Id*. The Secretary contends that Judge Williams "correctly afforded substantial deference to the Secretary's interpretations of the statute and regulations." Response at 2.

"[A]s a general rule, where [an] agency is interpreting its own regulations or it[s] own legislative rules, that interpretation is entitled to substantial deference." *Shalala v. St. Paul-Ramsey Med. Ctr.*, 50 F.3d 522, 528 (8th Cir. 1995). "A reviewing court should not reject reasonable administrative interpretation even if another interpretation may also be reasonable." *Creighton Omaha Reg'l Health Care Corp. v. Bowen*, 822 F.2d 785, 789 (8th Cir. 1987). Where the Secretary's position is "supported by the regulation's text and the overall structure of the regulations" it is a "reasonable regulatory interpretation" to which the court must defer. *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 94-95 (1995). Further, "broad deference is all the more warranted when . . . the regulation concerns 'a complex and highly technical regulatory program.'" *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). However, courts do not defer to an agency interpretation that is "inconsistent with the plain language of the statute or constitutes an unreasonable interpretation of an ambiguous statute." *Afolayan*, 219 F.3d at 787; *see also St. Paul-Ramsey*, 50 F.3d at 528 (noting that the court is required to "defer to the Secretary's interpretation unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation'" (quoting *Thomas Jefferson Univ.*, 512 U.S. at 512)).

Trinity asserts that substantial deference is inappropriate because the Secretary's construction is inconsistent with the statute, the construction was not developed contemporaneously with the statute or regulation and the construction was not consistently applied over time. In support of these assertions, Trinity relies on the arguments it makes

in its remaining objections. Upon de novo review, and for the reasons articulated in addressing Trinity's remaining objections, the court finds that Judge Williams correctly afforded substantial deference to the Secretary's interpretations of the statute and regulations. Accordingly, the court shall overrule this objection.

### B. *Classification of Costs as Variable*

Trinity objects to Judge Williams's finding that the Secretary's classification of the costs at issue—specifically, laundry and linen services, housekeeping, dietary costs of food, medical supplies charged to patients and drugs charged to patients—as variable is supported by substantial evidence. *See* Objections at 3. Trinity asserts that the Secretary "summarily concluded the costs were variable" and failed to consider the evidence that Trinity presented "that management had no control over these costs and that all of the costs at issue were essential to maintain its ongoing operations and to provide quality care to its patients." *Id*.

As noted above, the PRM provides guidance as to what constitutes fixed, semi-fixed and variable costs. The PRM states in relevant part,

> Fixed costs are those costs over which management has no control. Most truly fixed costs, such as rent, interest, and depreciation, are capital-related costs and are paid on a reasonable cost basis, regardless of volume. Variable costs, on the other hand, are those costs for items and services that vary directly with utilization such as food and laundry costs.
>
> . . . Semifixed costs are those costs for items and services that are essential for the hospital to maintain operation but also vary somewhat with volume. For purposes of this adjustment, many semifixed costs, such as personnel-related costs, may be considered as fixed on a case-by-case basis.

PRM § 2810.1(B).

The PRM explicitly recognizes that food and laundry are variable costs. Additionally, the court finds that the Secretary's determination that housekeeping, medical

12

supplies charged to patients and drugs charged to patients are expenses that vary directly with patient volume is supported by substantial evidence. The Secretary has routinely classified the types of costs at issue here as variable costs. *See, e.g.*, *Fairbanks Mem'l Hosp. v. Wisc. Phys. Servs.*, 2015 WL 5852432, at *3 (H.C.F.A. Aug. 5, 2015) (concluding that medical supplies, pharmaceuticals, food, linen and bedding were variable costs); *Unity Healthcare Muscatine, Iowa v. Blue Cross Blue Shield Ass'n*, 2014 WL 5450066, at *5 (H.C.F.A. Sept. 4, 2014) ("The MAC's exclusion of the [p]rovider's billable medical supplies, billable drugs and IV solutions, professional services obtained from third party providers, and dietary and linen expenses as variable was proper and consistent with the regulation, guidance and intent of the adjustment."); *Lakes Reg'l Healthcare Spirit Lake, Iowa v. Blue Cross Blue Shield Ass'n*, 2014 WL 5450078, at *2 (H.C.F.A Sept. 4, 2014) (finding that the MAC correctly eliminated variable costs, including billable medical supplies, billable drugs and IV drugs).

Further, the fact that Trinity contends that it "presented substantial evidence . . . that management had no control over these costs and that all of the costs at issue were 'essential to ongoing operations'" is unavailing. Objections at 3. The PRM does not provide for application of the definition of semifixed costs to items that fall squarely within the definition of variable costs. *See* PRM § 2810.1(B). Even assuming that this definition were applicable, the court has reviewed Trinity's evidence on this point and finds that it would not compel a contrary conclusion. Accordingly, the court shall overrule this objection.

### C. Reimbursement of Variable Costs through DRG

Trinity objects to Judge Williams's conclusion "that the [VDA] statute does not require that a hospital must receive its usual share of reimbursement, through the DRG payment, for its variable costs." Objections at 3-4. Trinity contends that the overall context of the Medicare statutory scheme "requires payment for operating costs of inpatient

13

services" including "both fixed and variable costs." *Id*. at 4; *see also* 42 U.S.C. § 1395ww(d)(1)(A). Trinity asserts that the Secretary's methodology for calculating VDA payments undermines the overall scheme "by withholding payment for variable costs to hospitals that qualify for the VDA." Objections at 5.

Trinity's argument misunderstands the statutory purpose of the Medicare program. The Medicare program does not entitle providers to dollar-for-dollar reimbursement for all costs incurred. Rather, as acknowledged by Trinity, utilization of the prospective payment system provides for hospitals to "receive a standard reimbursement amount per inpatient . . . regardless of the actual costs of caring for that patient." Plaintiff's Brief at 8; *see also* 42 U.S.C. § 1395ww(d) (providing prospective rates for payments). That the DRG payments may often cover both fixed and variable costs does not compel the conclusion that reimbursement for both types of costs is required by the Medicare statutory scheme. Thus, hospitals that qualify for VDA payments are not being denied reimbursement to which they are otherwise entitled.

Further, the VDA requires that the Secretary provide an "adjustment to the payment amounts under this subsection . . . as may be necessary to fully compensate the hospital for the fixed costs it incurs in the period in providing inpatient hospital services." 42 U.S.C. § 1395ww(d)(5)(D)(ii). The VDA statute anticipates consideration of the entirety of the Medicare reimbursement that a provider has received. Therefore, consideration of the DRG payments does not undermine the statutory scheme. Accordingly, the court shall overrule this objection.

### D. Consistency with Underlying Statute

Trinity objects to Judge Williams's finding that the Secretary's "methodology is consistent with the underlying VDA statute." Objections at 5. Trinity asserts that "the DRG payment is intended to fully compensate a hospital for its fixed and variable costs" and, therefore, the "full DRG payment cannot be considered as payment for fixed costs

14

only." *Id*. at 6.

As stated above, the DRG payment is not intended to fully compensate a hospital for its fixed and variable costs. Rather, hospitals receive a DRG payment regardless of the actual costs they incur in caring for patients. Therefore, that the Secretary's methodology takes into account the entirety of the DRG payment received does not render it inconsistent with the VDA statute. Accordingly, the court shall overrule this objection.

### E. Consistent Application

Trinity objects to Judge Williams's finding that the Secretary has "consistently applied the methodology at issue to determine the VDA payment until the recent change in the regulations in 2017." Objections at 6. Trinity points to the testimony of a MAC representative, in another PRRB appeal, to assert that the "the MAC adopted a change in policy in 2009 to remove variable costs from the [VDA] calculation." *Id*. Trinity also points to 2004 correspondence between a hospital provider and a CMS employee which, it contends, demonstrates that it was the "policy at that time to include variable costs in the VDA calculation." *Id*. at 8.

The court first notes that Trinity failed to raise either the testimony of the MAC representative or the 2004 correspondence of a CMS employee before Judge Williams. Rather, Trinity exclusively relied upon the 2006 Federal Register preamble discussion. *See* Plaintiff's Brief at 26. A party is "required to present all of [its] arguments to the magistrate judge." *Ridenour v. Boehringer Ingelheim Pharm., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012); *see also Hammann v. 1-800 Ideas.com, Inc.*, 455 F. Supp. 2d 942, 947-48 (D. Minn. 2006) ("A party cannot, in his objections to an R&R, raise arguments that were not clearly presented to the magistrate judge."). Arguably, Trinity has waived this argument. Nonetheless, the court shall proceed to address its contention that the Secretary has failed to consistently apply the VDA methodology.

The court finds Trinity's reliance on the testimony of a MAC representative and the

15

2004 correspondence of a CMS employee unpersuasive. The opinions of these employees neither bind the Secretary nor set Medicare policy. *See County of Los Angeles v. Leavitt*, 521 F.3d 1073, 1079 (9th Cir. 2008) (noting that "intermediary interpretations are not binding on the Secretary, who alone makes policy"). Rather, "'[t]he Secretary's position' is the position of the Department as an entity, and the fact that people in the chain of command have expressed divergent views does not diminish the effect of the agency's resolution of those disputes." *Homemakers N. Shore, Inc. v. Bowen*, 832 F.2d 408, 413 (7th Cir. 1987); *see also Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1321 (D.C. Cir. 1998) (concluding that "deference is owed to the decisonmaker authorized to speak on behalf of the agency, not to each individual agency employee" and noting that a contrary reading "would effectively empower any individual employee not just to veto the views of the agency head, but to preclude any deference to the agency at all, since [the court] would have no basis for deciding to whose view [it] should defer"). Thus, the court does not find that these opinions compel a finding that the Secretary has inconsistently applied the VDA methodology.

Further, Trinity has failed to point the court to any case that demonstrates that the Secretary applied the VDA calculation methodology in a manner inconsistent with the calculation utilized in the present case. *See* Report and Recommendation at 15 (noting that Trinity "cites no final agency decision to support its argument that the Secretary [has] applied inconsistent methodologies"). Upon review, the court finds that at least as of 2006, the Secretary has consistently applied the methodology used in this case. *See, e.g.*, *Fairbanks Mem'l Hosp.*, 2015 WL 5852432, at *3 (concluding that "pursuant to the statute, regulation and CMS guidance from the Federal Register and PRM, variable costs are to be excluded from the VDA calculation"); *Unity Healthcare Muscatine*, 2014 WL 5450066, at *5 (concluding that "[t]he MAC applied the proper methodology which represents that the [p]rovider's VDA is equal to the difference between its fixed and semi-

16

fixed costs and its DRG payment"); *Greenwood Cnty. Hosp. v. Blue Cross Blue Shield, Ass'n*, 2006 WL 3050893, at *6 (PRRB Aug. 29, 2006) (finding that the MAC "correctly chose not to consider within its calculation those costs . . . labeled as variable" and "that 42 C.F.R. § 412.96(e) and P.R.M. § 2810.1 explicitly dictate that the adjustment is limited to fixed and semi-fixed costs"); *see also* 82 Fed. Reg. 37990, 38180 (Aug. 14, 2017) (explaining that "under the current calculation methodology, the MACs calculate the [VDA] by subtracting the entirety of the hospitals total . . . DRG revenue for inpateint operating costs . . . from [the] fixed costs in the cost reporting period in which the volume decrease occurred"). Accordingly, the court shall overrule this objection.

### F. Consistency with Manual

Trinity objects to Judge Williams's finding that "it is not clear whether the methodology employed by the Secretary is inconsistent with the [PRM]." Objections at 9. Trinity contends that the two PRM provisions relied on by Judge Williams "do not support that the Secretary's methodology is consistent with the [PRM]." *Id*. at 10.

"The PRM is an extensive set of informal interpretative guidelines and policies published to assist intermediaries and providers." *Saint Marys Hosp.*, 535 F.3d at 807 (quoting *Horras*, 495 F.3d at 900). The PRM is "a useful guide to interpreting the Medicare statute and regulations" but it "is not strictly binding on the Secretary." *Id*. at 808 (quoting *Baptist Health v. Thompson*, 458 F.3d 768, 778 n.9 (8th Cir. 2006)); *see also Guernsey Mem'l Hosp.*, 514 U.S. at 99 (noting that "[i]nterpretive rules . . . do not have the force and effect of law"). Rather, "a claim of conduct inconsistent with an interpretive rule is advanced only to show that the statute itself has been violated." *Drake v. Honeywell, Inc.*, 797 F.2d 603, 607 (8th Cir. 1986).

After a de novo review, the court finds that it is unnecessary to determine whether the Secretary's methodology was inconsistent with the PRM. The court has already determined, for the reasons previously stated, that the Secretary's actions are not

17

inconsistent with the longstanding interpretation of the VDA statute. Therefore, any allegation that the Secretary acted inconsistently with the PRM is irrelevant. *See id.* ("[I]nterpretive rules never can be violated."). The court declines to adopt the portion of the Report and Recommendation wherein Judge Williams determined that it is not clear whether the methodology employed by the Secretary is inconsistent with the PRM. Accordingly, the court shall overrule the objection as moot.

## VII. CONCLUSION

In light of the foregoing, it is hereby **ORDERED**:

(1) The Objections (docket no. 33) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 32) is **ADOPTED IN PART** and the final decision of the Secretary is **AFFIRMED**; and

(3) The Complaint (docket no. 1) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**DATED** this 10th day of September, 2018.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA